**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

October 17, 2012

# In the Court of Appeals of Georgia

A12A1468. In the Interest of E. E. B. W., a child.

ANDREWS, Judge.

At issue is whether the Fulton County Juvenile Court properly exercised subject matter jurisdiction to terminate the parental rights of the adoptive parents of a minor child born in and a citizen of Zambia, but who, at the time of the termination proceedings, had lived in Fulton County for at least six consecutive months with persons acting as her parents. On appeal from the order terminating their parental rights, the adoptive parents contest only the Juvenile Court's subject matter jurisdiction – they do not claim that the Court lacked personal jurisdiction over them or the child, nor do they claim that the evidence introduced at the termination proceeding was insufficient under OCGA § 15-11-94 to support termination of their parental rights. We find that the Juvenile Court properly exercised subject matter

jurisdiction over the termination proceedings pursuant to OCGA § 15-11-28 and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (OCGA § 19-9-40 et seq.). Accordingly, we affirm the Court's order terminating parental rights.

The child was born in Zambia in June of 1997 and was almost 14 years old at the time of the June 2011 termination order. Orphaned at a young age, the child lived at an orphanage in Zambia and suffered from extensive facial deformities after a tumor caused by measles was removed from her face. The orphanage sought medical treatment for the child and in 2004 arranged for a medical charity, Childspring International, to sponsor the child's travel to Atlanta, Georgia to receive surgical and other medical treatment to correct her facial deformities. Pursuant to this arrangement, Childspring placed the child with a host family where the child has resided in Fulton County since 2005 while undergoing multiple surgeries and other medical treatment. Additional surgery is still necessary. In 2005, while the child was absent from Zambia, the married couple who operate the orphanage and claim dual United States and Zambian citizenship, adopted the then 8-year-old child in Zambia without notice or knowledge of the child. In 2006, the child made an outcry to medical providers that the couple (the adoptive parents pursuant to the Zambian adoption) and others had sexually abused her while she lived at the orphanage

operated by the couple in Zambia. Based on the allegations of sexual abuse, the Fulton County Department of Family and Children Services took the child into protective custody, investigated the allegations, and brought deprivation proceedings in June 2006. The Fulton County Juvenile Court adjudicated the child deprived in July 2007 and placed the child in the legal custody of the Department, which placed the child in foster care with the same host family that the child had lived with in Fulton County since 2005. The adoptive parents appeared at the deprivation proceedings, stipulated that the child was deprived, but denied any inappropriate sexual contact with the child. Subsequent to the Juvenile Court's order finding that the child was deprived, the adoptive parents did not appeal, did not complete the court-ordered plan for reunification with the child, provided no financial support for the child, and failed to maintain any contact with the Department concerning the child for three years prior to the termination of their parental rights in June 2011.

The adoptive parents contend that the UCCJEA provides that the Fulton County Juvenile Court lacked subject matter jurisdiction to consider proceedings to terminate their parental rights, and that Zambia has subject matter jurisdiction. To the contrary, we find no basis under the UCCJEA to conclude that subject matter jurisdiction in this case rests in Zambia.

A county juvenile court generally has exclusive original jurisdiction over child deprivation proceedings and subsequent termination of parental rights proceedings concerning a child present within the county. OCGA §§ 15-11-28; 15-11-29 (a). With respect to interstate child custody disputes, the jurisdictional rules of the UCCJEA also apply to "child custody determination[s]"[1] made in a wide range of "child custody proceeding[s]" defined to include not only "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue," but also "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from family violence, in which the issue may appear."[2] OCGA § 19-9-41 (3), (4). Accordingly, jurisdictional rules of the UCCJEA apply to both child deprivation proceedings in which the issue of "neglect" or "abuse" appears, and "termination of parental rights" proceedings. Id. The UCCJEA does not, however, govern adoption proceedings. OCGA § 19-9-42.

---

[1] "'Child custody determination'" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligations of an individual." OCGA § 19-9-41 (3).

[2] "[Child custody proceeding] does not include a proceeding involving juvenile deliquency, contractual emancipation, or enforcement under Part 3 of this article [OCGA §§ 19-9-81 thru 19-9-97]."

Moreover, under the UCCJEA, "a foreign nation is treated in the same manner as would be a sister state of the United States . . . [and] [a] foreign child custody determination must be enforced if it was made 'under factual circumstances in substantial conformity with the jurisdictional standards' of the UCCJEA. OCGA § 19-9-44 [(a),] (b)." *Bellew v. Larese*, 288 Ga. 495, 497-498 (706 SE2d 78) (2011). Under the UCCJEA, a state, including a foreign country, has subject matter jurisdiction to make an initial child custody determination if it is the child's "home state" on the date the child custody proceedings are commenced. OCGA § 19-9-61 (a) (1). The child's "home state" is defined as

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

OCGA § 19-9-41 (7).

Because the child in the present case lived in Fulton County with persons acting as parents for at least six consecutive months before the commencement of the deprivation proceedings, Georgia was the child's home state under the UCCJEA, and the Fulton County Juvenile Court had subject matter jurisdiction to make an initial

5

child custody determination in the deprivation proceeding pursuant to OCGA § 19-9-61 (a) (1). Under OCGA § 19-9-62 of the UCCJEA, a court which has made an initial child custody determination consistent with OCGA § 19-9-61 (a) (1) has exclusive continuing jurisdiction to modify its initial determination until:

> (1) A court of this state determines that neither the child nor the child's parents or any person acting as a parent has a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

> (2) A court of this state or a court of another state determines that neither the child nor the child's parents or any person acting as a parent presently resides in this state.

Subsequent to the initial child custody determination made in the deprivation proceedings, and through the commencement of the subsequent termination proceedings, the child and persons acting as the child's parents continued to live in Fulton County where the child continued to receive necessary medical treatment and care for facial deformities and for psychological and emotional trauma which evidence showed resulted from sexual abuse. Accordingly, we find under OCGA § 19-9-62 that the Fulton County Juvenile Court had exclusive continuing subject matter jurisdiction to modify its initial determination in the termination proceedings.

6

The adoptive parents claim that the 2005 Zambian adoption order, under which they claimed parental rights in the child, was the initial child custody determination concerning the child, and provided the basis for exclusive, continuing subject matter jurisdiction in Zambia under OCGA § 19-9-62. Even though the adoption was entered in Zambia prior to the Fulton County deprivation proceedings, the UCCJEA does not apply to adoption proceedings, therefore the adoption was not a child custody determination for purposes of establishing subject matter jurisdiction under the UCCJEA.[3] OCGA § 19-9-42. There is nothing in the record to support the adoptive parents' assertion that a Zambian court made a child custody determination under the UCCJEA prior to the adoption order.

Finally, we find no merit to the claim that the termination proceedings were outside the subject matter jurisdiction of the Fulton County Juvenile Court because the proceedings were actually a disguised custody dispute between the adoptive parents and the foster parents with whom the child was placed by the Department. The deprivation proceedings (from which there was no appeal) and the subsequent termination proceedings were brought by the Department based on evidence that the

---

[3] The same rule applies to the adoptive parents' claim that they "re-adopted" the child in Tennessee in 2008.

7

child was deprived, and that medical evidence showed she displayed behaviors consistent with her claim that she had been sexually abused, including fear of the adoptive parents, and resulting emotional and psychological trauma.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*